UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CASSANDRA GREEN | CIVIL ACTION NO. 03-0426 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MONROE CITY SCHOOL BOARD AND CURTIS ARMAND, JESSIE L. HANDY, STEPHANIE S. SMITH, MICKEY TRAWICK, ANTHONY CAIN, AND VICKIE DAYTON IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MONROE CITY SCHOOL BOARD | MAG. JUDGE JAMES D. KIRK |

# Ruling

This is an action brought by Plaintiff Cassandra Green ("Green"), individually and on behalf of her minor son, Richard Dickson ("Dickson"), against her former employer, the Monroe City School Board ("Board"), and the individual members of the Board, Curtis Armand, Jessie L. Handy, Stephanie S. Smith, Mickey Trawick, Anthony Cain, and Vickie Dayton. In her Complaint, Green alleged that Defendants violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"); Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165 ("Title II of the ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504 of the Rehabilitation Act"); and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* ("Title VI"), by denying Dickson access to an adequate education. Green further alleged that Defendants violated Title VI, the Rehabilitation Act, and Title II of the ADA by terminating her employment in retaliation for seeking to enforce her son's legal rights. Finally, Green asserted state law claims of negligence under Louisiana Civil Code article 2315.

On May 10, 2004, Defendants filed a Motion for Summary Judgment [Doc. No. 8] seeking dismissal of all Green's claims or, alternatively, partial summary judgment. Green opposed the Motion for Summary Judgment. After an extension to allow the parties to conduct discovery and after supplemental briefing by both parties, on January 7, 2005, this Court granted and denied in part Defendants' Motion for Summary Judgment. Specifically, the Court ruled as follows:

1. Green's claims on behalf of Dickson under the IDEA, Section 504 of the Rehabiliation Act, and Title II of the ADA were dismissed without prejudice for failure to exhaust administrative remedies.

2. The Court ordered Green to amend her Complaint to state that the Monroe City Schools are the recipient of federal financial assistance and to present any evidence of intentional race discrimination in support of the Title VI claims on behalf of Dickson within ten (10) business days of the date Judgment was entered.

3. The Court denied summary judgment on Green's retaliation claim under Title VI and ordered Green to amend her Complaint to state that the Board is the recipient of federal financial assistance.

4. The Court denied Defendants' Motion for Summary Judgment on Green's retaliation claim under Title II of the ADA, finding that she was not required to exhaust administrative remedies.

5. To the extent that Green sought to pursue any employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, or Title I of the ADA, 42 U.S.C. §12101, *et seq.*, the Court granted Defendants' Motion for Summary Judgment.

6. The Court granted Defendants' Motion for Summary Judgment on Green's negligence claims on behalf of herself and Dickson.

7. To the extent that Defendants moved for summary judgment on Green's due process claim, brought pursuant to 42 U.S.C. § 1983, the Court denied their motion.

Thus, after the Court's Ruling, the only claims pending were (1) Green's Title VI claims on behalf of Dickson, (2) Green's retaliation claims under Title VI, Title II of the ADA, and Section 504 of the Rehabilitation Act, and (3) Green's due process claim under 42 U.S.C. § 1983.

On February 15, 2005, Green obtained leave of Court to amend her Complaint. In her First Supplemental and Amending Complaint, she added the allegations that (1) the Board is the recipient of federal funds and (2) she was never informed of any appeal rights under the IDEA and thus should be exempted from exhausting her administrative remedies. Contrary to the Court's order, Green did not allege any additional facts supporting her claim of intentional race discrimination under Title VI.

On August 5, 2005, Defendants filed a second Motion for Summary Judgment [Doc. No. 37] in which they seek judgment as a matter of law on Green's remaining claims. On September 12, 2005, the Court granted Green's Unopposed Motion for Extension of Time to Respond to Motion for Summary Judgment. Green was ordered to obtain other counsel to file a response or to file a response pro se no later than September 28, 2005. Green failed to take either action, and Defendants' second Motion for Summary Judgment is unopposed.

I. **FACTS**

The Court adopts the facts and procedural history contained in its January 7, 2005 Ruling. In connection with their second Motion for Summary Judgment, Defendants have provided the Court with the following additional facts:

The deposition of Doug Lawrence, attorney for the Board, was taken on June 6, 2005. Lawrence testified that he was not involved in the investigation of the facts leading up to Green's tenure hearing in April 2002. Lawrence described his role at the tenure hearing as follows:

> To serve as the legal advisor to the Board as it went through the procedures and through the process that are involved in a tenure hearing. And also to serve as a hearing officer in as much as there were four attorneys involved. There were two attorneys representing Ms. Green and two attorneys representing the superintendent. The Board saw fit to appoint me as a hearing officer.

Defendants' second Motion for Summary Judgment [Doc. No. 37], Exhibit 2, p. 5. Finally, Lawrence explained the voting procedures after the tenure hearing, specifically stating that he did not vote, did not make a recommendation to the Board, and did not influence the Board in its decision regarding Green. As "legal advisor," Lawrence believed his role was to make sure that the Board "followed the law." Defendants' second Motion for Summary Judgment [Doc. No. 37], Exhibit 2, pp. 7-9.

## II.  LAW AND ANALYSIS

### A.  Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its

case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Even so, a motion for summary judgment cannot be granted simply because there is no opposition, whether or not the failure to oppose it violates a local rule. *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). However, when a nonmovant fails to provide a response identifying the disputed issues of fact, the Court may accept the movant's description of the undisputed facts as *prima facie* evidence of its entitlement to judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 173-74 (5th Cir.1999); *NorDar Holdings, Inc. v. W. Sec. (USA) Ltd.*, No. 3:96-CV-0427-H, 1996 WL 39019, *2 (N.D. Tex. Dec. 18, 1996).

### B.     Green's Title VI Claims

Title VI prohibits discrimination in federally funded programs on the basis of race, color, or national origin. 42 U.S.C. § 2000d. To bring an action "for violation of Title VI, [a] plaintiff must allege that: (1) [the defendant] received federal financial assistance, (2) he was an intended beneficiary of the program or activity receiving the assistance, and (3) [the defendant] discriminated against him on the basis of race, color, or national origin in connection with that program or activity." *Commodari v. Long Island Univ.,* 89 F. Supp.2d 353, 377 (E.D. N.Y. 2000); *see also United States v. Harris Methodist Fort Worth,* 970 F.2d 94, 98 (5th Cir. 1992).

5

### 1. Claim on Behalf of Dickson

In its January 7, 2005 Ruling, the Court found that Green raised only one factual allegation involving race in her Complaint: that Defendants failed to take appropriate action following an August 6, 2001, incident in which an unnamed faculty member allegedly called Dickson a racially derogatory name. The Court concluded that Green could not meet her burden under Title VI on the basis of this one incident when she had not presented any evidence to suggest that the incident constituted intentional discrimination or that it somehow resulted in intentional discrimination against Dickson.

Because the Court addressed Green's Title VI claims sua sponte, Fifth Circuit precedent dictates that Green be allowed a period of time to respond. Therefore, Green was ordered to amend her Complaint to state that the Monroe City Schools are the recipient of federal financial assistance and to present any evidence of intentional race discrimination in support of Dickson's Title VI claims within ten (10) business days of the date Judgment was entered, or she was warned that her Title VI claims on behalf of Dickson would be dismissed with prejudice.

Green has failed to comply with the Court's order. For the reasons discussed in the Court's January 7, 2005 Ruling, Defendants' second Motion for Summary Judgment on Green's Title VI claims brought on behalf of Dickson is GRANTED.

### 2. Green's Title VI Retaliation Claim

Title VI's implementing regulations prohibit the recipient of federal funds from retaliating against any individual who makes a complaint or participates in an investigation under Title VI. 34 C.F.R. § 100.7(e); *see also Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003). To make out a prima facie case of Title VI retaliation, a plaintiff must show

 (1) that she engaged in protected activity;

 (2) that the defendant took a material adverse employment action against her, and

(3) that a causal connection existed between the protected activity and the adverse action.

*Peters*, 327 F.3d at 320 (citations omitted); *see generally Shackleford v. Deloitte & Touch, LLP*, 190 F.3d 398, 407-408 (5th Cir. 1999).[1]  "As in other civil rights contexts, to show 'protected activity,' the plaintiff in a Title VI retaliation case need 'only . . . prove that [s]he opposed an unlawful . . . practice which [s]he reasonably believed had occurred or was occurring.'" *Peters*, 327 F.3d at 320 (citing *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1503 (11th Cir.1990); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 355 n. 1 (4th Cir.1985), *overruled on other grounds* by *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)).  Therefore, the Court must determine whether the plaintiff "'subjectively (that is, in good faith) believed' that the [defendant] had engaged in a practice violative of [Title VI], and . . . whether this belief 'was objectively reasonable in light of the facts.'" *Id.* at 321 (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir.2002)).

If a plaintiff can make out a prima facie case of retaliation, then the burden of production shifts to the defendant to demonstrate a legitimate nonretaliatory purpose for the employment action.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citation omitted).

Finally, if the defendant satisfies its burden of production, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. *Id.*

In this case, Green has asserted that she was retaliated against by Defendants for asserting her son's civil rights.  To make out the first prong of her prima facie case of retaliation, Green had to

---

[1] Defendants improperly cite the Court to the test for a discrimination action under Title VI.  This is the correct test for the claim by Green on behalf of Dickson, but not for her retaliation claim.  The Court did not previously cite the retaliation test because Defendants had not addressed the underlying merits of her claim.

believe in good faith that Defendants intentionally discriminated against her son on the basis of his race, and her belief had to be objectively reasonable in light of the facts. While Green may believe that her son was discriminated against, she has pointed the Court to no evidence other than a single incident of racial name-calling by a faculty member at Dickson's school. Green's belief that her son was intentionally discriminated against is not objectively reasonable on the basis of this one allegation, even if true. Thus, Green has failed to establish the first prong of her prima facie case.

Green has also failed to establish the third prong of her prima facie case. She has failed to produce any evidence of a causal connection between the alleged protected activity and her subsequent termination.

Because Green has failed to meet her prima facie burden, the Court need not apply the remainder of the burden-shifting test. Defendants' second Motion for Summary Judgment on Green's Title VI retaliation claim is GRANTED.

### C. Green's Retaliation Claims under Title II of the ADA and Section 504 of the Rehabilitation Act

Green also asserted retaliation claims under Title II of the ADA and Section 504 of the Rehabilitation Act. Because these two acts are nearly identical, the Court will analyze Green's claims together. *See Pace v. Bogalusa*, 403 F.3d 272 (5th Cir. 2005). The Court applies the same test to these retaliation claims as to Green's claim under Title VI. *See Daniel v. City of Lanett*, No. Civ. A. 00-D-400-E, 2000 WL 1863485 at *2 (M.D. Ala. Dec. 11, 2000) ("The method of analysis in retaliation claims is the same under the ADA, the [Age Discrimination in Employment Act], the Rehabilitation Act, or Title VII.") (citing *Brungart v. Bellsouth Telecomm., Inc.*, No. 99-14472, 2000 WL 1584555 (11th Cir. Oct. 24, 2000)).

With regard to these claims, Defendants do not contend that Green has failed to make out a

8

prima facie case of retaliation. Thus, the Court will also assume that she has met this burden.

Defendants contend, however, that the facts, as previously stated by this Court, provide a "legitimate basis upon which to convene a tenure hearing and ultimately discharge Ms. Green from her employment." The Court agrees. As previously discussed in its January 7, 2005 Ruling, Green engaged in clearly inappropriate behavior, such as cursing at school personnel at more than one school and on more than one occasion.

Because Defendants have produced a legitimate, nonretaliatiory reason for the adverse employment actions against Green, she was required to produce some evidence the reasons were false or pretext for retaliation. She has failed to do so.

Accordingly, Defendants' Motion for Summary Judgment on Green's retaliation claims under Title II of the ADA and Section 504 of the Rehabilitation Act is GRANTED.

### D. Green's Due Process Claim

Green has also asserted a due process claim under 42 U.S.C. § 1983 alleging that she was denied a fair and impartial tenure hearing because Lawrence, attorney for the Board, was involved in the investigation of her actions and then served as the hearing officer at her termination hearing. The Court denied Defendants' first Motion for Summary Judgment on Green's due process claim because the record at the time did "not provide sufficient information about the termination hearing, the investigation, or Lawrence's role to make a determination." January 7, 2005 Ruling [Doc. No. 23].

Since that time, Lawrence has been deposed. He denies participating in the investigation of Green's actions leading to her termination hearing. He points out that Green was represented by two attorneys at the tenure hearing and that the Board was represented by two attorneys. Lawrence further testified that he did not vote on Green's termination, did not make a recommendation to the Board, and did not influence the Board in its decision to terminate Green. Rather, he served only as a "legal

9

advisor" at the tenure hearing to make sure that the Board "followed the law."

Given these undisputed facts, the Court finds that there is no genuine issue of material fact for trial as to whether Lawrence's serving as hearing officer was a violation of Green's due process rights. Defendants' Motion for Summary Judgment on Green's due process claim under 42 U.S.C. § 1983 is GRANTED.

### E. Green's Claims on Behalf of Dickson under the IDEA, Title II of the ADA, and Section 504 of the Rehabilitation Act

In its January 7, 2005 Ruling and Judgment, the Court dismissed Green's claims on behalf of Dickson under the IDEA, Title II of the ADA, and Section 504 of the Rehabilitation Act for failure to exhaust administrative remedies. However, in her First Supplemental and Amending Complaint, Green asserts that "the Monroe City Schools never informed Ms. Green of any appeal rights . . . . Specifically, she was never informed that there was a right of appeal to the Louisiana Department of Education." First Supplemental and Amending Complaint, ¶ 2. Based on these asserted facts, Green claims that she is entitled to an "exception to the exhaustion of administrative remedies requirement." First Supplemental and Amending Complaint, ¶ 2.

Green is correct that her alleged failure to receive notice of appeal rights may constitute an exception to the exhaustion requirement, but she failed to plead this exception in her original Complaint. When presented with Defendants' first Motion for Summary Judgment, she never mentioned that she had not been informed of her appeal rights. Rather, she cited the Court to *Honig v. Doe*, 484 U.S. 305, 327(1988), in which the Supreme Court stated that "[p]arents may by-pass the administrative process [if] exhaustion would be futile or inadequate."

Even after the Court's Ruling that she was required to exhaust her administrative remedies, Green did nothing more than assert a lack of notice in her unverified First Supplement and Amending

10

Complaint. She has failed to present any affidavit, deposition, or other evidence supporting this exception. Accordingly, the Court will not reconsider its January 7, 2005 Ruling and Judgment dismissing Green's claims on behalf of Dickson under the IDEA, Title II of the ADA, and Section 504 of the Rehabilitation Act.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 37] is GRANTED, and Green's remaining claims are DISMISSED WITH PREJUDICE. The Court will not reconsider its previous dismissal of Green's claims on behalf of Dickson under the IDEA, Title II of the ADA, and Section 504.

MONROE, LOUISIANA, this 24th day of October, 2005.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE